```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
```
JAMIE ZHENG

              Plaintiff,

  -against-

MANDARICH LAW GROUP, LLP

              Defendant.

```
-------------------------------------------------x
```

## MEMORANDUM AND ORDER

Case No. 1:19-cv-1626-FB-RER

*Appearances*:
*For the Plaintiff*:
JONATHAN MARK CADER
Barshay Sanders, PLLC
100 Garden City Plaza
Suite 500
Garden City, NY 11530

*For the Defendant*:
NICOLE STRICKLER
Messer Strickler, Ltd.
225 W. Washington St.
Suite 575
Chicago, IL 60606

**BLOCK, Senior District Judge:**

      Defendant Mandarich Law Group, LLP ("Mandarich") sent Plaintiff Jamie Zheng a letter demanding payment of a debt allegedly owed to its client, JH Portfolio Debt Equities ("JH"). Zheng alleges that Mandarich violated the Fair Debt Collection Practices Act ("FDCPA") because: (1) Mandarich's use of letterhead implicitly threatened legal action and discouraged Zheng from exercising his validation rights; (2) its letter falsely implies that an attorney was "meaningfully involved" in Zheng's case; (3) its letter does not clearly convey the

1

amount of the debt; (4) its letter inaccurately states the amount of Zheng's debt; (5) its letter improperly identifies JH as Zheng's creditor; and (6) its letter "misrepresents the legal status" of Zheng's debt by claiming that it is owed to JH.

Both parties move for summary judgment on all claims. For the reasons below, Zheng's motion is denied, and Mandarich's motion is granted in part.

**I.**

Jamie Zheng is a citizen of the state of New York, who made several purchases on a Bergdorf Goodman credit card funded by Capital One Bank. His most recent statement shows that, as of September 17, 2017, Zheng owed $14,947.10 on the card. *See* ECF No. 28, Ex. 5 at 2.[1] Capital One "charged off" the account in October of 2017 and sold it to JH in November of the same year.

JH retained Mandarich to collect Zheng's debt on its behalf. Mandarich Attorney Scott Whitbeck ("Whitbeck" or "Attorney Whitbeck") reviewed Zheng's file and evaluated it according to the firm's "Meaningful Involvement Procedure" ("Policy"). The Policy requires an attorney to review several items before sending an "initial communication" to a consumer, including:

> (1) "original account level documentation showing the [consumer's] name, last four digits of [the consumer's] account number at [the time of] charge-off [and] the claimed amount of the debt"; (2) any "applicable terms of and conditions for the account"; and (3) "a certified or otherwise properly authenticated bill of sale evidencing the transfer of the debt. . . being collected plus a document signed by the [consumer] evidencing the opening

---

[1] All exhibit and page numbers are drawn from the Electronic Court Filing System ("ECF").

2

of the account; or original, account level documentation reflecting a purchase, payment, or other actual use [of the account] by the [consumer]."

ECF No. 28, Ex. 2 at 3; *see also* ECF No. 28, Ex. 3. After reviewing this information, the attorney must determine that "the statute of limitations [on collection] has not run, that the debt is not in bankruptcy, and that the identity [of the consumer], [along with his or her] address and venue are correct for [the purpose of filing] any suit." *Id.* If the attorney is satisfied with the result of this review, he enters data related to the consumer and debt into a software program (the "JST Collection Platform"), which generates a collection letter according to a template. Mandarich then places this letter on firm letterhead and mails it to the consumer. The Policy allows an attorney to review up to 300 consumer files per day. ECF No. 28, Ex. 3 at 3.

Whitbeck avers that Zheng's file contained documents that allowed him to identify Zheng, ascertain the amount of his debt, and confirm that JH owned the debt. Specifically, Whitbeck reviewed a bill of sale signed by Capital One's Senior Vice President that transferred Zheng's file to JH (ECF No. 28, Ex. 4), a digital file that provides basic biographical information on Zheng, as well as information about his credit card and payment history (*Id.* at 3), and several account statements (ECF No. 28, Ex. 5). In each case, Whitbeck confirmed that the information in the account statements matched the information contained in the bill of sale and digital

3

file. Based on this review, Whitbeck used the JST Collection Platform to generate a letter, which was sent to Zheng.

That letter, which was printed on Mandarich letterhead, is reproduced below:

| | |
|---|---|
| Current Creditor: | JH Portfolio Debt Equities, LLC |
| **Our File No.:** | 113524 |
| Original Creditor: | CAPITAL ONE, N.A. |
| Original Creditor Account No.: | xxxxxxxxxxxx1906 |
| **Total Amount Due As Of Charge Off:** | $14,947.10 |
| Total Amount Of Interest Accrued Since Charge Off: | $0.00 |
| Total Amount Of Non-Interest Charges Or Fees Accrued Since Charge Off: | $0.00 |
| **Total Amount Of Payments And/Or Credits Since Charge Off:** | $0.00 |
| **Date Of Last Payment:** | 4/14/2017 |
| Current Balance: | $14,947.10 |
| **Charge Off Date:** | 10/31/2017 |

Dear Jamie Zheng,

Your account has been sold and assigned to our client, JH Portfolio Debt Equities, LLC. This office has been hired to collect the above balance that you owe our client. This is a demand for payment of your outstanding obligation.

Please contact Collection Supervisor, John Licata, of our office should you wish to discuss payment arrangements on your account. You can reach us on our toll-free number of 833.769.2757. When contacting our office by phone or letter, please refer to file number 113524.

Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by us. Upon your written request within the thirty-day period we will provide you with the name and address of the original creditor, if different from the current creditor.

    Sincerely,
    Mandarich Law Group, LLP

\*\*\*

> NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION
>
> THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
>
> ALL CALLS TO AND FROM MANDARICH LAW GROUP, LLP MAY BE MONITORED AND/OR RECORDED FOR COMPLIANCE PURPOSES.
>
> NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS LICENSE NUMBER 2079588-DCA.

ECF No. 28, Ex. 6 at 56. On its second page, the letter lists an "Important Notice of Rights," which explains that the FDCPA prohibits debt collectors from engaging in "abusive, deceptive, and unfair debt collection practices" and lists certain types of income that may not be taken to pay a debt. *Id.* at 57.

Attorney Whitbeck did not review the letter before sending it to Zheng. However, he is familiar with the template used to create it.

## II.

### A.  Summary Judgment

On a motion for summary judgment, the Court must "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). Summary judgment is appropriate only if the pleadings, the discovery materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

5

"The same standard of review applies when the Court is faced with cross-motions for summary judgment." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015). "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration." *Id.* (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

**B.    FDCPA Claims**

The FDCPA states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

In deciding whether a collection notice violates § 1692e, the Court's inquiry is "guided by two principles of statutory construction." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 213 (2d Cir. 2018) (citing *Avila v. Riexinger & Assocs., LLC* ("*Avila I*"), 817 F.3d 72, 75 (2d Cir. 2016)). "The first principle is that the FDCPA must be construed liberally to effectuate its stated purpose—i.e., 'to eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

6

consumers against debt collection abuses.'" *Taylor*, 886 F.3d at 213-14 (citing 15 U.S.C. § 1692(e)).

"The second principle is that collection notices are to be looked at from the perspective of the 'least sophisticated consumer,'" meaning "we ask how the least sophisticated consumer—one not having the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer—would understand the collection notice." *Id*. at 214 (citing *Avila I*, 817 F.3d at 75).

Debt collection notices must also comply with 15 U.S.C. § 1692g. That subsection requires that notices contain specific information about the debt and the consumer's rights. *See generally* 15 U.S.C. § 1692g. Even if a letter contains a formally correct notice of rights, it may still violate the subsection 15 U.S.C. § 1692g if "that notice is overshadowed or contradicted by other language in communications to the debtor." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). "A notice overshadows or contradicts a [notice of rights] if it would make the least sophisticated consumer uncertain as to her rights." *Id.* (internal quotations and citations omitted).

### III.

The parties agree that Zheng is a "consumer," that Mandarich is a "debt collector," and that Zheng's alleged debts are "[consumer] debts" for purposes of the Court's FDCPA analysis. 15 U.S.C. § 1692a. Thus, the only question is

7

whether the letter is "false, deceptive or misleading" for any of the reasons Zheng identifies.

A.   **Count I—Attorney Letterhead**

Zheng alleges that the Mandarich's use of law firm letterhead constitutes an implicit threat of legal action that "overshadows" the letter's notice of rights and discourages Zheng from exercising his right to validate the debt.[2] *See* ECF No. 14 at 4-7; *see also* ECF No. 29 at 26. Mandarich argues that it is entitled to summary judgment on this claim because "attorney letterhead. . .does not, in isolation, imply imminent litigation," and nothing else in the letter would lead a consumer to believe that "legal action was authorized, likely and imminent." ECF No. 28, Ex. 7 at 8-9 (citing *Avila v. Riexinger & Assocs., LLC. ("Avila II")*, 644 F. App'x 19, 22 (2d Cir. 2016) *and Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993)). Zheng responds that he is entitled to summary judgment because the use of "attorney letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter," who is made to understand that "the price of poker has just gone up." ECF No. 29 at 26 (quoting *Blitzko v. Weltman,*

---

[2] Count I also alleges that Mandarich "placed the required validation notice on the Letter in an inconspicuous manner." ECF No. 14 at 6. This allegation is factually baseless. The validation notice appears in the body of the letter in the same font and typeface as the rest of the letter's text. Even the least sophisticated consumer can be expected to review the text of a letter sent to him. *See* ECF No. 28, Ex. 6 at 30 (acknowledging that Zheng read the letter); *see also McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002).

*Weinberg & Reis Co., LPA*, No. 1:17-CV-458 (BKS/DJS), 2019 WL 4602329, at *4 (N.D.N.Y. Sept. 23, 2019) *and Herzlinger v. Nichter*, No. 7:09-CV-192, 2011, 2011 WL 1434609, at *6 (S.D.N.Y. Feb. 9, 2011)). Separately, Zheng argues that he is entitled to judgment because, absent some disclaimer, the use of attorney letterhead falsely implies that an attorney was "meaningfully involved" in preparing the letter. *See* ECF No. 31, Ex. 6 at 24-27; *see also Greco v. Trauner, Cohen & Thomas*, *LLP*, 412 F.3d 360, 364-65 (2d Cir. 2005) (discussing "attorney involvement" claims and disclaimers).

As a preliminary matter, only Zheng's first argument is relevant to Count I of his amended complaint, which claims that Mandarich's letter violates 15 U.S.C. §§ 1692e and 1692g because the use of attorney letterhead threatens legal action and discourages Zheng from exercising his validation rights. As Zheng himself recognized when he pled the two claims in separate counts, that issue is analytically distinct from the question of whether Mandarich violated the rule articulated in *Greco* by misrepresenting the level of attorney involvement in Zheng's case. *See* ECF No. 14 at 4-7. Accordingly, the Court limits its analysis of Count 1 to the question of whether the use of attorney letterhead "operates to overshadow the validation notice. . . printed [on the letter], insofar as it would lead [the least sophisticated consumer] to believe she could be sued even if she were. . .

9

to demand validation. . . . [such that she] would be caused to forego her dispute rights out of. . .false fear." ECF No. 29 at 25.

Here, nothing suggests that the letter would have this effect. Courts in the Second Circuit have consistently held that "[a] debt collection letter on law firm letterhead does not inherently overshadow the validation notice." *Susino v. Lacy Katzen, LLP*, -- F. Supp. 3d --, 2021 WL 859372, at *6 (W.D.N.Y. Mar. 8, 2021) (quoting *Hochauser v. Grossman & Karaszewski, PLLC*, No. 19-CV-2468 (ARR) (RML), 2020 WL 2042390, at *5 (E.D.N.Y. Apr. 28, 2020)); *see also Solovyova v. Grossman & Karaszewski, PLLC*, No. 20-CV-2996, 2021 WL 535209, at *6 (E.D.N.Y. Feb. 12, 2021); *Park v. Forster & Garbus, LLP*, No. 19-CV-3621 (ARR) (ST), 2019 WL 5895703, at *8 (E.D.N.Y. Nov. 12, 2019) (dismissing FDCPA claim even though the letter from an attorney "reference[d] a lawsuit"); *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 274 (D. Conn. 2007) ("The claim that every letter from an attorney carries a threat of legal action has been described as. . . overbroad and. . . frivolous") (internal quotations and citations omitted)). Thus, although Zheng is correct that the use of firm letterhead suggests attorney "involvement," no other "aspect" of the letter indicates that legal action has begun or is imminent. *See Susino*, 2021 WL 859372, at **6-7 On the contrary, the letter makes no reference to a "lawsuit" or "litigation," and the only laws cited are those that protect Zheng's right to verify and dispute the debt. *See*

10

ECF No. 28, Ex. 6 at 56-7. *Cf. Park*, 2019 WL 5895703, at *8. No consumer—no matter how unsophisticated—would read such a letter and believe they "[were] or [are] being sued," nor could a consumer rationally conclude that a lawsuit would follow if they invoke the rights described in the letter. *Susino*, 2021 WL 859372, at **6-7 Mandarich is therefore entitled to judgment on Zheng's first cause of action.[3]

**B.    Count II—"Meaningful Attorney Involvement"**

By contrast, neither party is entitled to summary judgment on Zheng's claim that the letter falsely suggests that an attorney was "meaningfully involved" in drafting the letter. The parties agree that the letter was sent on Mandarich letterhead *without* a disclaimer stating that Mandarich's involvement was limited. *See* ECF No. 28, Ex. 6 at 56-7. Thus, under Second Circuit law, the letter will be deemed "misleading" unless one or more Mandarich attorneys was "meaningfully involved" in its preparation. *Greco*, 412 F.3d, at 363-64; *see also Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) ("The use of an attorney's signature

---

[3] The Court further rejects Zheng's assertion that Mandarich was required to explicitly advise him that "the fact that [his] account was transferred to a law firm does not override [his] right to dispute the debt." ECF No. 14 at 5. Zheng cites nothing in support of this claim, likely because "nothing in the caselaw nor the FDCPA itself supports [the] theory that a law firm. . . acting as a debt collector is required to expressly state that the rights set forth in the validation notice are not diminished because of the law firm's involvement." *Susino*, 2021 WL 859372, at *7.

implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor").

Mandarich argues that it has satisfied this standard because Attorney Whitbeck reviewed Zheng's file and used the JST Collection Platform to generate a template letter. According to Mandarich, this sort of involvement is "meaningful" as a matter of law. Zheng responds that Whitbeck's use of a form template and admitted failure to review the final letter defeat any argument that he was "meaningfully involved," and thus that he is entitled to judgment.

Neither party's argument carries the day. In 2015, this Court observed that "a determination of whether an attorney [has] conducted a meaningful review is a fact intensive analysis, turning on such questions as 'precisely what information the affiants reviewed, how much time was spent reviewing the plaintiff's file, and whether any legal judgment was involved with the decision to send the letters.'" *Luftig v. Sokoloff*, No. 13-CV-4313 (FB) (VVP), 2015 WL 151463, at *1 (E.D.N.Y. Jan. 13, 2015) (quoting *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 307 (2d Cir. 2003)). Here, although Whitbeck's affidavit and Mandarich's exhibits shed some light on the materials Whitbeck reviewed, they provide insufficient material for a "fact intensive analysis." Specifically, the Court notes that Whitbeck does not state how long he spent reviewing Zheng's file, nor does he say how many files he reviewed on the same day. These facts are significant

because Mandarich's Policy allows attorneys to review as many as 300 files in a single work-day, i.e. to spend approximately 1.6 minutes on each file.[4] Such a cursory review is plainly not "meaningful."

It is, however, equally clear that the record does not support a finding that Whitbeck's review was not "meaningful" as a matter of law. Zheng cites nothing to show that it is inherently unreasonable for lawyers to rely on programs like the JST Collection Platform, and it is likely that Whitbeck reviews fewer than 300 files per day. Accordingly, a jury must be allowed to evaluate Whitbeck's involvement with Zheng's case.

C. **Counts V & VI—Identity of Zheng's Creditor**

Zheng next claims that he owes no money to Mandarich's client, JH. If true, Zheng's allegation would support a finding that Mandarich violated 15 U.S.C. § 1692g(a)(2) by failing to identify the proper creditor (Count V) and 15 U.S.C. § 1692e by misrepresenting the legal status of Zheng's debt (Count VI). *See* ECF No. 28 at 10-12.

Mandarich argues that it is entitled to summary judgment because it has produced evidence that JH owns Zheng's debt in the form of a bill of sale signed by Capital One's Senior Vice President that transferred Zheng's file to JH (ECF

---

[4] This calculation assumes that a typical Mandarich attorney works eight hours (from 9:00 a.m. to 5:00 p.m.) with no breaks. The need for such assumptions underscores the gaps in the record.

13

No. 28, Ex. 4), a digital file that provides basic biographical information on Zheng as well as information about his credit card and payment history (*Id.* at 3), and several account statements (ECF No. 28, Ex. 5). It further points out that Zheng recognized and admitted to receiving those same account statements (*see, e.g.*, ECF No. 28, Ex. 6 at 27-28), and that he opened, used and carried a balance on the same credit card listed on the statements. *Id.* at 23-26. Zheng does not contest the substance of this evidence. Rather, he argues that he is entitled to summary judgment because Mandarich's evidence does not comply with heightened evidentiary standards that New York state courts impose on debt buyers who move for default judgment in consumer credit cases. *See generally* N.Y. Comp. Codes, R. & Regs. tit. 22 § 202.27-a.

      The Court rejects Zheng's argument. This case involves neither an attempt to collect Zheng's debt through the courts nor a default judgment. The concerns that drove the New York courts to impose a heightened evidentiary burden are simply not present in a case where a consumer affirmatively sues a debt collector to obtain compensation. *Cf. Consumer Credit Reform Rules & Resources*, http://ww2.nycourts.gov/rules/ccr/index.shtml#10 (last accessed Mar. 31, 2021) (noting that "the new rules are intended to ensure a fair legal process and address documented abuses, including entry of default judgment despite insufficient or incorrect factual proof, expiration of the applicable statute of limitations and failed

14

service of process").[5] Moreover, Zheng's argument would, if accepted, "turn the burden of proof on its head" and unfairly force FDCPA defendants to affirmatively disprove allegations that the plaintiffs have not yet proven. *Jenkins v. LVNV Funding, LLC.*, No. 14-CV-5682, 2017 WL 1323800, at *8 (E.D.N.Y. Feb. 28, 2017); *see also Moore v. Mortg. Elec. Registration Sys., Inc.*, No. 10-CV-241, 2013 WL 1773647, at *4 (D.N.H. Apr. 25, 2013) ("defendants are not required to prove that they did not violate the FDCPA; rather, the [plaintiffs] must prove that they did.").

Having dispensed with Zheng's argument, the Court concludes that Mandarich provides adequate proof of ownership. Here, as in *Jenkins*, Zheng does not deny using the underlying account, and Mandarich presents reliable documentary evidence showing that Zheng owed a debt on his Bergdorf-Goodman/Capital One Card that was sold to JH. *See generally* ECF No. 28, Ex. 2 at 2-4; ECF No. 28, Ex. 5; ECF No. 28, Ex. 6 at 23-28 (admitting that Zheng used the account). *See also Jenkins,* 2017 WL 1323800, at *5 (citing *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005) for the proposition that "[an] affiant may testify as to the contents of records that she reviewed in her official capacity"). To refute this evidence, Zheng offers

---

[5] Because the New York state default judgment rules do not apply to this case, the state law decisions cited in Zheng's response brief are irrelevant. *See* ECF No. 29 at 19 (collecting New York state cases).

15

no more than allegations that he does not owe the debt and is unfamiliar with JH. Such claims are insufficient to defeat summary judgment. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### D.   Counts III and IV—Amount Owed

Finally, Zheng alleges that Mandarich's letter misstates the amount owed on his account. The parties' arguments on this issue mirror those made on Counts V and VI of the amended complaint. Here as there, Mandarich cites the documentary record, while Zheng insists that the amount cannot be correct because he does not owe JH any money at all. *See* ECF No. 29 at 20-21; ECF No. 31, Ex. 6 at 20.[6] Accordingly, the Court grants Mandarich's request for summary judgment and denies Zheng's for the reasons stated in the preceding section.

## CONCLUSION

Zheng's motion for summary judgment is **DENIED**. Mandarich's motion is **DENIED** as to Count II of Zheng's amended complaint (the "Meaningful Involvement Claim") but **GRANTED** as to all other Counts. The Court expresses

---

[6] Zheng also asserts, in a single sentence, that he is entitled to summary judgment because "it is alleged that the amount of the Alleged Debt exceeds any amount(s) owed on account of Plaintiff's Bergdorf Goodman credit card." ECF No. 31, Ex. 6 at 20. This allegation is insufficient to create an issue of material fact in light of the extensive documentary evidence Mandarich submits. *See Zenith Radio Corp.*, 475 U.S. at 586-87.

no opinion regarding—and this Order shall have no estoppel effect on—a subsequent suit to collect Zheng's debts in the state or federal courts.

**SO ORDERED.**

          /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 31, 2021